United States District Court
Southern District of Texas

**ENTERED**

January 25, 2023

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-15-0060-01 |
| | § | |
| RAYNARD GRAY | § | |

## MEMORANDUM OPINION AND ORDER

The defendant, Raynard Gray (Register No. 82831-379), is currently serving a term of 510 months' confinement in the United States Bureau of Prisons as the result of his conviction for bank robbery and firearms offenses. See Judgment in a Criminal Case, Docket Entry No. 477, pp. 1, 2. Now pending before the court is Gray's "Motion for Sentence Reduction Under . . . 18 U.S.C. [§] 3582(c)(1)(A)" ("Defendant's Motion") (Docket Entry No. 587). The United States of America has filed the Government's Response to Defendant's Motion for Compassionate Release ("Government's Response") (Docket Entry No. 590); and Gray has filed a reply entitled "Petitioner's Response to Defendant Gov./Respondent, Raynard Gray, Motion to Dismiss for Compassionate Release" ("Defendant's Reply") (Docket Entry No. 592). After carefully considering the entire record and the applicable law, the court will deny Defendant's Motion for the reasons explained below.

## I. Background

On February 4, 2015, a federal grand jury returned an indictment against Gray and several other co-defendants in

connection with the armed robbery of a local credit union.[1]   On
June 9, 2016, the grand jury returned a second superseding
indictment charging Gray and co-defendant Sonny Floyd Pervis with
two counts of bank robbery under 18 U.S.C. § 2113(a) (counts one
and three), carrying and using a firearm in relation to a "crime of
violence" under 18 U.S.C. § 924(c) (count two), and brandishing a
firearm during and in relation to a "crime of violence" under 18
U.S.C. § 924(c) (count four).[2]   The counts arose from two separate
incidents.   On July 26, 2014, Gray and his co-defendants attempted
an armed robbery of the Shared Resources Credit Union in Pasadena,
Texas; and two days later on July 28, 2014, they were successful in
robbing that same establishment while using firearms.[3]

After a four-day trial in March of 2017, a jury found Gray and
Pervis guilty on all four counts.[4]   On October 26, 2017, the court
sentenced Pervis to serve two concurrent terms of 125 months'
imprisonment for the bank robbery counts (counts one and three),
followed by a consecutive term of five years (60 months) for the
firearms offense alleged in count two and another consecutive term

---

[1]Indictment, Docket Entry No. 1, pp. 1-2.   For purposes of
identification all page numbers reference the pagination imprinted
on each docket entry by the court's electronic case filing ("ECF")
system.

[2]Second Superseding Indictment, Docket Entry No. 221, pp. 1-4.

[3]Id. at 1-3.

[4]Verdict, Docket Entry No. 330 (Gray); Verdict, Docket Entry
No. 331 (Pervis).

of 25 years (300 months) for the firearms offense alleged in count four, for a total of 485 months' imprisonment.[5]  On April 3, 2018, Gray received a sentence of two concurrent terms of 150 months for the bank robbery counts (counts one and three), followed by a consecutive term of five years (60 months) for the firearms offense alleged in count two and another consecutive term of 25 years (300 months) for the firearms offense alleged in count four, for a total of 510 months' imprisonment.[6]

Gray and Pervis challenged their convictions on appeal, which were heard jointly.  The Fifth Circuit affirmed both convictions after briefly summarizing the evidence admitted at trial as follows:

> On July 26, 2014, a group of armed men attempted to enter the Shared Resources Credit Union on Highway 225 in Pasadena, Texas, but its doors were locked.  Appellants Pervis and Gray were among this group.
>
> Two days later, on July 28, Pervis and Gray returned to the credit union.  Pervis, who rode in one vehicle with two associates, entered and robbed the credit union at gunpoint.  Gray rode in another vehicle that provided surveillance.  A third vehicle was for those carrying out the robbery to get away.  After Pervis and his two carmates robbed the credit union, they did not get away cleanly, however.  Patrol cars caught up to them as they left the area, spurring a high-speed chase that resulted in several arrests but also the escape of several other persons.
>
> Law enforcement tracked the defendants down in the ensuing months.  Most agreed to be interviewed.  In their telling, Gray organized the robbery.  Defendant Keith

---

[5]Judgment in a Criminal Case, Docket Entry No. 434, p. 3.

[6]Judgment in a Criminal Case, Docket Entry No. 477, p. 2.

-3-

> McGee said that Gray recruited him, supplied him with the
> gun that McGee used in the robbery, and coordinated the
> group's efforts on July 28.   Defendant Leroy Richardson
> also said that Gray recruited him and instructed the
> group throughout the robbery.   Defendant Christopher
> Braziel likewise identified Gray as the planner of the
> robbery.

United States v. Pervis, 937 F.3d 546, 548-49 (5th Cir. 2019).
Gray filed a petition for a writ of certiorari, which the Supreme
Court denied on June 21, 2021.   See Gray v. United States, 141
S. Ct. 2788 (2021).   Gray did not seek further review under 28
U.S.C. § 2255.

Gray, who is currently 39 years of age, is serving his
sentence of imprisonment at the United States Penitentiary in
Beaumont, Texas ("USP-Beaumont").[7]   He is not projected to be
released until 2051.[8]

Invoking 18 U.S.C. § 3582(c)(1)(A), Gray now seeks a reduction
in sentence under a statutory amendment to the sentencing
enhancement for firearms offenses found in 18 U.S.C. § 924(c),
which was enacted while his direct appeal was pending.[9] As grounds
for relief Gray argues that the second "stacked" or consecutive
term that he received as the result of his conviction for
brandishing a firearm during a crime of violence (count four) has
been invalidated by the First Step Act of 2018, which amended 18

---

[7]See United States Bureau of Prisons website, available at:
https://www.bop.gov/inmateloc/ (last visited Jan. 17, 2023).

[8]See id.

[9]Defendant's Motion, Docket Entry No. 587, p. 1.

U.S.C. § 924(c) to clarify the circumstances in which a second stacked sentence is applicable.[10]   Arguing that the 25-year enhancement no longer applies to him, Gray asks the court to vacate the 300-month stacked sentence that he received on count four and grant him compassionate release from prison by modifying the judgment to time served.[11]   The government opposes Gray's motion for a reduction in sentence, arguing that the factors outlined in 18 U.S.C. § 3553(a) do not support his request.[12]

## II.   Analysis

Subject to limited exceptions a district court generally may not reduce or modify a defendant's sentence of imprisonment after it has been imposed.   See 18 U.S.C. § 3582(c); Dillon v. United States, 130 S. Ct. 2683, 2690 (2010) (explaining that a judgment of conviction that includes a sentence of imprisonment is a "'final judgment'" that "may not be modified by a district court except in limited circumstances").   Gray seeks relief under an exception that allows a district court to modify a term of imprisonment for compassionate reasons under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. 115-391, Title VI, § 603(b), 132 Stat. 5194, 5239-41 (Dec. 21,

_____

[10]Id. at 1-2.

[11]Id. at 4; Defendant's Reply, Docket Entry No. 592, p. 4 (requesting a sentence reduction to time served).

[12]Government's Response, Docket Entry No. 590, pp. 5-8.

2018), upon motion of the Director of the Bureau of Prisons "or upon motion of the defendant" after he has exhausted administrative remedies. 18 U.S.C. § 3582(c)(1)(A). A defendant is eligible for a sentence reduction under § 3582(c)(1)(A)(i) if the court finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. If the district court makes these two findings, then the court "may" reduce the defendant's sentence "after considering the factors set forth in [S]ection 3553(a) to the extent that they are applicable." Id. at § 3582(c)(1)(A).

Gray does not attempt to show that his circumstances are extraordinary or compelling under the policy statement that currently applies to motions for a reduction in sentence.[13]

_____

[13]The Fifth Circuit has held that the policy statement found in U.S.S.G. § 1B1.13, which governs motions to reduce a term of imprisonment, is not binding and does not control the outcome of a motion for compassionate release filed by a defendant on his own behalf. See United States v. Shkambi, 993 F.3d 388, 392-93 (5th Cir. 2021). To the extent that it provides relevant guidance, however, Gray does not show that he has a serious medical condition or that he meets any other criteria that would qualify as an extraordinary and compelling reason for a sentence reduction as described in commentary to the current policy statement. See U.S.S.G. § 1B1.13(1)-(2). Gray has submitted a Memorandum from an assistant warden at the Federal Correctional Complex in Beaumont, advising that there were 69 cases of COVID-19 at the facility in September of 2021. See Defendant's Reply, Docket Entry No. 592, p. 6. However, Gray does not allege facts showing that he has tested positive for COVID-19, and his fear of contracting the virus or any of its variants does not entitle him to release. See United States v. Thompson, 984 F.3d 431, 435 (5th Cir.), cert. denied, 141 S. Ct. 2688 (2021).

Instead, Gray attacks the validity of the sentence enhancement that he received for a firearms offense pursuant to 18 U.S.C. § 924(c), which at the time of his sentencing mandated a consecutive sentence of the statutory mandatory minimum term of 25 years for a second offense.   See Deal v. United States, 113 S. Ct. 1993, 1996-97 (1993) (construing § 924(c) to permit a "second or subsequent conviction" to be charged in the same indictment and adjudicated in the same proceeding as the first offense).   Gray raised a similar challenge on appeal, but the Fifth Circuit held that his claim was foreclosed by Deal.   See Pervis, 937 F.3d at 553.

Gray now contends that he is entitled to relief because, in addition to authorizing a defendant to file a motion for compassionate release on his own behalf, Section 403 of the First Step Act abrogated Deal and clarified that the sentence-stacking enhancement for a second firearms offense found in § 924(c) "applies only when a prior § 924(c) conviction arises from a separate case and already 'has become final.'" United States v. McCoy, 981 F.3d 271, 275 (4th Cir. 2020) (quoting Pub. L. No. 115-391 § 403(a), 132 Stat. 5194, 5222 (2018)); see also United States v. Davis, 139 S. Ct. 2319, 2324 n.1 (2019) ("In 2018, Congress changed the law so that, going forward, only a second § 924© violation committed 'after a prior [§ 924(c)] conviction . . . has become final' will trigger the 25-year minimum." (alterations in original) (citation omitted)).   This statutory change, however, is not retroactive to defendants who were

-7-

sentenced before the First Step Act went into effect on
December 21, 2018. <u>See</u> Pub. L. No. 115-391, § 403(b), 132 Stat.
5194, 5221-22 ("This section, and the amendments made by this
section, shall apply to any offense that was committed before the
date of enactment of this Act, if a sentence for the offense has
not been imposed as of such date of enactment."); <u>United States v.
Gomez</u>, 960 F.3d 173, 177 (5th Cir. 2020) (holding that the First
Step Act "itself plainly states that § 403 is not retroactive:  It
applies to an offense committed before its December 21, 2018
effective date only 'if a sentence for the offense ha[d] not been
imposed as of such date.'" (alteration in original) (footnote
omitted)).  As a result, this intervening change in the law does
not apply to Gray, whose sentence was imposed on April 3, 2018.

The government concedes that if Gray were sentenced today he
would not be eligible for the consecutive 25-year mandatory minimum
term of imprisonment that he received on count four of the second
superseding indictment and that his sentence for this offense under
§ 924(c) would likely have been 84 months.[14]  Instead of 510 months,
the government estimates that Gray could have received a total
sentence of 294 months' imprisonment.[15]  Gray contends that this
disparity in sentence constitutes an extraordinary and compelling
reason to release him from confinement under § 3582(c)(1)(A)(i).[16]

---

[14]Government's Response, Docket Entry No. 590, p. 6.

[15]<u>Id.</u>

[16]Defendant's Reply, Docket Entry No. 592, p. 4.

Some courts have concluded that the sentence disparity created by the First Step Act and its amendment of the sentence-stacking statute for second convictions under § 924(c) may qualify as an extraordinary and compelling reason to reduce a defendant's term of imprisonment under § 3582(c)(1)(A). See, e.g., United States v. Rainwater, Criminal No. 3:94-CR-042-D(1), 2021 WL 1610153, at *2 (N.D. Tex. April 26, 2021) (citing United States v. Curtis, Case No. 01-CR-03-TCK, 2020 WL 6484185, at *7 (N.D. Okla. Nov. 4, 2020)). Other courts have reached the opposite conclusion. See, e.g., United States v. Guillory, Case No. 2:02-CR-20062-01, 2022 WL 3718087, at *4 (W.D. La. Aug. 26, 2022) (finding that "the discretionary authority conferred by § 3582(c)(1)(A) cannot be used to effect a sentencing reduction at odds with Congress's express determination in § 403(b) of the First Step Act that the amendment to § 924(c)'s sentencing structure apply only prospectively" and that § 3582(c)(1)(A) "does not include authority to reduce a mandatory minimum sentence on the basis that the length of the sentence itself constitutes an extraordinary and compelling circumstance warranting a sentencing reduction").

The Fifth Circuit has not yet decided whether nonretroactive changes to a sentencing statute can serve as extraordinary and compelling reasons for compassionate release. See United States v. Reed, Criminal No. 3:13-CR-481-B-5, 2022 WL 198405, at *3 (N.D. Tex. Jan. 21, 2022) (observing that "the Fifth Circuit has not decided whether nonretroactive changes to sentencing laws may

-9-

constitute extraordinary and compelling reasons for compassionate release and that courts in this circuit have reached conflicting answers" (citations omitted)).  There is a split of authority among the circuits regarding this issue, with a majority of the courts of appeal holding that a nonretroactive change in the law cannot serve as grounds for a sentence reduction under § 3852(c)(1)(A).  <u>Compare</u> <u>United States v. Jenkins</u>, 50 F.4th 1185, 1198 (D.C. Cir. 2022) (describing the circuit split before joining the Third, Seventh, and Eight Circuits in holding that intervening but expressly nonretroactive sentencing statutes "may neither support nor contribute to a finding that extraordinary and compelling reasons warrant compassionate release") and <u>United States v. McCall</u>, — F.4th —, 2022 WL 17843865, at *15 (6th Cir. Dec. 22, 2022) (en banc) (concluding also that "[n]onretroactive legal developments, considered alone or together with other factors, cannot amount to an 'extraordinary and compelling reason' for a sentence reduction") <u>with</u> <u>United States v. Chen</u>, 48 F.4th 1092, 1097 (9th Cir. 2022) (joining the First, Fourth, and Tenth Circuits in holding that "district courts may consider § 403(a)'s non-retroactive changes to penalty provisions, in combination with other factors, when determining whether extraordinary and compel-ling reasons for compassionate release exist in a particular case").

Congress could have made the sentencing amendment found in § 403(a) of the First Step Act retroactive, but chose not to. Under these circumstances, the court concludes that the resulting

-10-

sentence disparity in Gray's case does not qualify as an extraordinary and compelling reason to reduce his existing sentence, which would accord him the benefit of that nonretroactive amendment contrary to Congress's intent. See Jenkins, 50 F.4th at 1199 ("[B]y making its ameliorative amendment expressly nonretroactive, First Step Act § 403(b), 132 Stat. at 5222, Congress reaffirmed that the 25-year minimum remained appropriate for defendants already sentenced."); see also United States v. Thacker, 4 F.4th 569, 574 (7th Cir. 2021) (concluding that the discretionary authority to reduce a sentence under § 3582(c)(1)(A) "cannot be used to effect a sentencing reduction at odds with Congress's express determination embodied in § 403(b) of the First Step Act that the amendment to § 924(c)'s sentencing structure apply only prospectively").

Gray does not otherwise show that a sentence reduction is consistent with the applicable sentencing factors found in 18 U.S.C. § 3553(a). Even assuming that sentencing disparity could serve as an extraordinary circumstance for purposes of § 3582(c)(1)(A), the defendant "still must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors." Shkambi, 993 F.3d at 393 (explaining that a court considering "a prisoner's own motion" is bound "only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a)"). Because decisions about whether to grant or deny a motion for compassionate release are "inherently discretionary,"

Ward v. United States, 11 F.4th 354, 360 (5th Cir. 2021), "a thorough factual record" is required, and a district court "must provide specific factual reasons, including but not limited to due consideration of the § 3553(a) factors[], for its decision." United States v. Chambliss, 948 F.3d 691, 693 (5th Cir. 2020) (footnote omitted).  A defendant's motion for compassionate release may be denied if the defendant fails to persuade the sentencing judge that his early release would be consistent with the factors set out in § 3553(a).  See United States v. Jackson, 27 F.4th 1088, 1089 (5th Cir. 2022).

The government argues that the § 3553(a) factors weigh against a reduction in Gray's sentence.[17]  Those factors require a court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant."   18 U.S.C. § 3553(a)(1).  In doing so the court must consider

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

---

[17]Government's Response, Docket Entry No 590, pp. 5-8.

Id. at § 3553(a)(2).   It is Gray's burden to demonstrate that a
reduction in sentence is warranted by these factors.   See Ward, 11
F.4th at 361.   He makes no effort to do so, and the record fails to
disclose any basis for a favorable exercise of discretion.

In Gray's case the "seriousness of the offense" weighs heavily
against a reduction in sentence.   See 18 U.S.C. § 3553(a)(2)(A).
According to the Presentence Investigation Report ("PSR"), Gray was
identified as a leader/organizer of the crew that robbed the Shared
Resources Credit Union while carrying firearms.[18]  Gray planned the
offense, recruited members of the crew, and supplied them with
weapons.[19]  While serving as a lookout outside the establishment,
Gray communicated with the armed perpetrators by cell phone during
the offense that occurred on July 28, 2014,[20] in which $19,470 was
stolen and never recovered.[21]  The robbers terrorized the credit
union employees during the offense,[22] then led police on a high-
speed chase.[23]

The government argues that Gray's criminal history alone makes
him an untenable candidate for relief.[24]  The PSR assessed a total

_____

[18]PSR, Docket Entry No. 359, p. 17 ¶ 42.

[19]Id. at 10-11 ¶¶ 21-22, 13-17 ¶¶ 35-41.

[20]Id. at 14 ¶ 35.

[21]Id. at 17 ¶ 42 (reflecting that a total of $22,250 was taken
during the bank robbery, but $2,780 was recovered).

[22]Id. at 13-14 ¶ 35.

[23]Id. at 14 ¶ 35 and 18 ¶ 47.

[24]Government's Response, Docket Entry No. 590, p. 6.

-13-

of 25 criminal history points, placing Gray in Criminal History Category VI.[25] The PSR reflects that between the age of 14 and 31, when he orchestrated the robbery of the Shared Resources Credit Union, Gray incurred at least 20 convictions in state court for offenses of assault, possession of marijuana, unauthorized use of a motor vehicle, and multiple counts of criminal trespass, evading arrest or detention by police, and burglary of a motor vehicle.[26] In one case Gray was charged with aggravated assault after he shot someone in the back during an argument, but he was convicted pursuant to a plea agreement of attempted possession of a firearm by a felon.[27]

The PSR reflects that Gray was involved in other bank robberies that preceded the offense that occurred at the Shared Resources Credit Union on July 28, 2014. On July 14, 2014, two weeks before the Shared Resources Credit Union robbery took place, Gray and the same group of perpetrators robbed the Texas Bay Area Credit Union in Houston using guns provided by Gray.[28] After Gray and his crew divided the proceeds (between $60,000 to $65,000) the guns were returned to Gray.[29] There is no information in the PSR

---

[25]PSR, Docket Entry No 359, p. 30 ¶ 101.

[26]Id. at 21-30 ¶¶ 80-99.

[27]Id. at 26 ¶ 91.

[28]Id. at 20 ¶ 79.

[29]Id.

-14-

about whether Gray or his confederates were ever charged in connection with this offense.

The government argues that Gray's lengthy criminal record illustrates that he has been "impervious to rehabilitation" and that his criminal conduct was increasingly violent.[30]   At the sentencing hearing Gray denied having anything to do with robbing the Shared Resources Credit Union, despite ample evidence to the contrary at his trial, and he has not accepted responsibility or shown any remorse.[31]   Nor has he provided any evidence of rehabilitation while in prison.   Given the serious nature of his criminal record, Gray has not established that the sentence imposed no longer serves the need to afford adequate deterrence for his criminal conduct or to protect the public from further crimes by him.   See 18 U.S.C. § 3553(a)(2)(B)-(C).   Gray has served less than half of the 510-month term of imprisonment; and a reduction in sentence to time served would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment. See 18 U.S.C. § 3553(a)(2)(A).

After considering 18 U.S.C. § 3582(c)(1)(A) and all of the relevant sentencing factors, the court concludes that none of those factors weigh in favor of a reduction in the 510-month sentence that Gray received.   Therefore, his motion for a reduction in sentence will be denied.

---

[30]Government's Response, Docket Entry No. 590, p. 7.

[31]Transcript of Sentencing, Docket Entry No. 504, p. 5.

### III.   Conclusion and Order

Accordingly, it is **ORDERED** that the Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) filed by Raynard Gray (Docket Entry No. 587) is **DENIED**.

The Clerk will provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 25th day of January, 2023.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE